[**CERTIFIED TRANSLATION of the following 15 pages:** SLG Semidey Vazquez v. ASIFAL, 177 D.P.R. 657 (2009)]

**177 D.P.R. 657, 2009 WL 5449129 (P.R.), 2009 TSPR 184**

Dalma Semidey Ortiz, Noel Vázquez Morales and their community marital property *et al.*, plaintiff respondents,

vs.

Consorcio del Área Sur Central de Inversión para la Fuerza Laboral (*South Central Workforce Investment Consortium*), defendant petitioner.

In the Supreme Court of Puerto Rico.
*Numbers:* CC-2006-768 CC-2006-847

**Synopsis**

*Petition for Writ of Certiorari* to request reversal of a Judgment issued by *Judge Carmen A. Pesante Martínez, Judge Yvonne Feliano Acevedo and Judge Jorge Escribano Medina*, Judges of the Court of Appeals, reversing the Court of First Instance and deciding that the framework for applying Sec. 188(a)(2) of the *Workforce Investment Act*, 29 U.S.C.A. sec. 2938(a)(2), was limited to discrimination claims against participants of programs that are subsidized under said federal legislation, excluding employees of said programs. *Affirming the Judgment issued by the Court of Appeals reversing the Court of First Instance and remanding the case to the latter so that it can decide all of the controversies submitted on the merits in accordance with what is decided herein.*

*Jorge Martínez Luciano*, attorney for the South Central Workforce Investment Consortium Consortium [sic], municipalities of Coamo, Santa Isabel and Juana Díaz, petitioner; *Salvador J. Antonetti Stutts*, attorney general, and *Leticia Casalduc Rabell*, assistant attorney general, representatives of Ángel Sánchez Bermúdez, Hon. Ramón A. Hernández Torres, Hon. Juan C. García, Mr. Edgar A. González Moreno, Danyvi Santiago Rodríguez and Griselle García, petitioner; *Cynthia G. Espendez Santisteban*, attorney for respondent.

Associate Judge Pabón Charneco delivered the opinion of the Court.

This petition gives us the opportunity to interpret Pub. Law No. 105-220 enacted on August 7, 1998, as amended, known as the Workforce Investment Act of 1998, 29 U.S.C.A. secs. 2801–2945 (WIA) for the first time. Specifically, we must determine whether said statute establishes exclusive primary jurisdiction proceedings to consider claims (under the Constitution and state legislation) based on alleged employment discrimination for political reasons, on the basis of age and physical condition of an employee that works in a municipal Consortium.

**I**

Ms. Dalma Semidey (Ms. Semidey) is a career employee for the South Central Workforce Investment Consortium (ASIFAL). She works there as a Program Coordinator in the Advising Area. ASIFAL is an entity created in accordance with Art. 2.001(p) of Law No. 81 enacted on August 30, 1991, as amended, known as the 1991 Autonomous Municipality Act for the Commonwealth of Puerto Rico (21 L.P.R.A. sec. 4051(p)).[1] That entity was created for the **\*663** purpose of managing employment and training programs subsidized by the WIA.

On October 5, 2004, Ms. Semidey, her husband Noel Vázquez Morales, their Community Marital Property and their son represented by them, filed a Complaint in the Court of First Instance against ASIFAL, the six municipalities that make up said Consortium, several employees of the municipal Consortium, and the Mayors of the respective municipalities. Respondent alleged, *inter alia*:

> [T]hat her employer ASIFAL South-Central Consortium, is subjecting her to work conditions that are not safeguarded by any legal precept and that the employer is carrying out these discriminatory acts on the basis of politics, age and a medical condition reported to the State Insurance Fund, related to her work, which has caused a disability; by modifying her position in order to remove her from her position in ASIFAL, modifying her tasks, not paying adequate compensation, reducing her salary, not paying benefits such as differentials, causing harm, suffering, mental anguish and losses from defendants.[2]

The complaint indicates that the action filed by plaintiff essentially had to do with violation

SLG Semidey Vazquez v. ASIFAL, 177 D.P.R. 657 (2009)

2009 TSPR 184

of civil rights under Secs. 1 and 20 of Art. II of the Constitution of Puerto Rico, L.P.R.A., Volume 1;[3] labor claim due to affecting Ms. Semidey's property right to occupy her career position as a Program Coordinator in the Area of Counseling; a torts claim under Arts. 1802 and 1803 of the Civil **\*664** Code of Puerto Rico, 31 L.P.R.A. secs. 5141 and 5142; a violation of the WIA; a violation of both Law No. 100 enacted on June 30, 1959, as amended, known as the Employment Discrimination Act, 29 L.P.R.A. sec. 146 *et seq.*, as well as Law No. 44 enacted on July 2, 1985, as amended, known as the Disability Discrimination Prohibition Act, Law No. 105 enacted on December 20, 1991, among others.[4]

In its responsive allegation—filed on April 25, 2005— the municipality of Juana Díaz filed before the Court of First Instance a motion to dismiss. It based its request on the fact that Sec. 188(a)(2) of the WIA, 29 U.S.C.A. sec. 2938(a)(2), grants the Department of Labor exclusive primary federal jurisdiction over any claim based on alleged violation of civil rights filed by participants or employees of programs that are subsidized under the aforementioned federal legislation.[5] In support of its position, it noted that the regulations applicable to the cited Sec. 188(a)(2) —found in the *Code of Federal Regulations*, 29 C.F.R. sec. 37.1 *et seq.*— supported said argument. In essence, it alleged that in accordance with Sec. 37.85(c)(2) of the *Code of Federal Regulations*, 29 C.F.R. sec. 3785(c)(2), the *Civil Rights Center* (CRC),[6] is the entity with exclusive jurisdiction to consider complaints arising from a practice that is prohibited by Sec. 188(a)(2) of the WIA, *supra.* It noted that any person that is harmed by an activity contained in said section must file a Complaint before the CRC or before the Consortium, which, in turn, shall refer the complaint to the CRC. **\*665**

In response to said answer, on May 17, 2005, plaintiffs opposed the motion to dismiss. They argued that the cited Sec. 188(a)(2) of the WIA applied solely to participants of the system subsidized under said statute and not to the employees of the Consortium who work as resources to administer it. They argued that it is the participants and not the employees who shall submit to federal legislation.

*A posteriori*, on December 28, 2005, the Municipality of Juana Díaz supplemented its motion to dismiss. It argued that the municipalities that belong to Consortiums organized in accordance with Art. 2.001(p) of Law No. 81, *supra*, were not liable for discriminatory actions committed by the employees of the Consortium, and that plaintiff could not allege a violation of due process

of law as it was limited to the property interest of public employees to continuing employment and not to the duties inherent to the position they hold.

Then on January 27, 2006, plaintiff opposed the supplementary motion to dismiss filed by defendant.

Having all of the parties' arguments before it, on January 31, 2006, the Court of First Instance issued Judgment in which it adopted all of the arguments raised by the municipality of Juana Díaz. Thus it dismissed the Complaint. It decided, citing Sec. 188(a)(2) of the WIA, *supra*, and Sec. 37.85(c)(2) of the *Code of Federal Regulations*, supra, that the Congress of the United States had provided an exclusive administrative mechanism to consider claims such as that of plaintiff, therefore it lacked jurisdiction to consider the action that was filed.

Not satisfied with said decision, plaintiff appealed before the Court of Appeals. Said court reversed the Court of First Instance. It decided that the framework of **\*666** application of Sec. 188(a)(2) of the WIA, *supra*, was limited to discrimination claims against participants of subsidized programs according to said federal legislation, excluding employees of the aforementioned programs. In that sense, it decided that plaintiffs could use the judicial forum to file a claim as to their rights. Thus it remanded the case to the Court of First Instance so that it could be decided on the merits.

Since they were not [satisfied] with the decision of the Court of Appeals, ASIFAL and the Municipalities of Santa Isabel, Juana Díaz and Coamo, appeared before this Forum and assigned the following errors:

> 1. *The Court of Appeals erred when it determined that the jurisdictional limitation contained in Section 188 of the WIA does not apply to employees of inter-municipal consortiums.*
>
> 2. The CA erred when it reversed the judgment of the CFI without considering the additional grounds expressed by said forum.

Furthermore, the Attorney General appears before this Court in representation of then mayor of the municipality of Santa Isabel, Mr. Ángel M. Sánchez Bermúdez; the mayor of the municipality of Juana Díaz, Hon. Ramón A. Hernández Torres; the mayor of the municipality of Coamo, Hon. Juan C. García Padilla; the Executive Director of the ASIFAL Consortium, Mr. Edgar A. González Moreno; the Director of Human Resources of the ASIFAL Consortium, Ms. Danyvi N. Santiago Rodríguez, and the Program Director for the ASIFAL Consortium, Ms. Griselle García Hernández (CC-2006–847), and assigned the following as an error:

> 1. *The Court of Appeals erred when it ignored the clear language of section 188 of*

*the WIA and its Regulations, which jointly clearly provide that it shall apply both to discriminatory practices related to participants or beneficiaries of a program supported by WIA funds, and to employment practices related to program administration.*

Considering both *certiorari* petitions, we decided to consolidate **\*667** and issue them for purposes of adjudication. As all of the parties have appeared, we proceed to decide the controversies that have been raised.

## II

*A priori*, we must consider the jurisdictional argument raised both by the Attorney General and by ASIFAL. See: *Pérez Rosa v. Morales Rosado*, 172 D.P.R. 216 (2007); *Autoridad Sobre Hogares v. Sagastivelza*, 71 D.P.R. 436, 439 (1950). In short, both parties argue that the Complaint should be dismissed for lack of jurisdiction. They essentially allege that Sec. 188(a)(2) of the WIA, *supra*, and Sec. 37.85(c)(2) of the *Code of Federal Regulations*, supra, provide administrative proceedings that constitute the mechanism with primary exclusive jurisdiction for participants and/or employees of programs subsidized by the federal statute who allege that they have been subject to discrimination in their employment relationship or as beneficiaries of said programs. Furthermore, both ASIFAL and the Attorney General argue that Section 188(a)(2) of the WIA, *supra*, make reference both to discriminatory practices related to participants or beneficiaries of a program financed by funds from the WIA, and to employment practices related to the administration of or otherwise connected to the WIA programs.

Additionally, plaintiff makes no opposition in its briefs as to the application of the cited Section 188(a)(2) of the WIA both to the employees and to the participants of programs subsidized by said law. Rather it argues that the language of that section is not clear, and that therefore it is not prevented from filing a Complaint before the courts of Puerto Rico requesting relief in accordance with local legislation and Constitution due to alleged political discrimination based on politics, age and physical condition. **\*668**

According to said positions, in order to determine whether the WIA establishes an exclusive primary jurisdiction procedure we must decide whether Sec. 188 of the WIA, *supra*, applies both to participants and to employees of the subsidized programs under said statute.
A. As professors Muñiz-Argüelles and Fraticelli Torres

indicate "[e]xegesis is the process through which the interpreter seeks to obtain the true sense and scope of the law." L. Muñiz and M. Fraticelli, *La investigación jurídica: fuentes puertorriqueñas, norteamericanas y españolas*, 3rd ed., Bogotá, Ed. Temis, 2000, p. 266. See, also, Ch. Zeno Santiago and V. Bermúdez Pérez, *Tratado de Derecho del Trabajo*, San Juan, Pubs. J.T.S., 2003, T. I, Sec. 4.1, p. 61. Therefore, when deciding on the meaning and scope of a statutory provision, one must turn to the rules of interpretation provided by our law.

[1–2] One of the rules of interpretation that is well-established in our jurisdiction is that when a law is clear and free from ambiguity it must be understood according to its terms. 31 L.P.R.A. sec. 14. The Federal Supreme Court has established the same rule of interpretation, stating the following: "[when] the intent of Congress is clear [from the statutory text], that is the end of the matter ...." *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 842 (1984). Similarly, said Forum has stated the following: "[i]n matters of statutory construction, it is appropriate to begin with the language of the statute itself." *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 91 (1981). In harmony with the above, we have held that laws should not be interpreted by considering some of the sections, paragraphs, or sentences in isolation, rather they should be taken into consideration with all of their context. *Descartes, Tes. v. Tribl. Contrib. y Sucn. Cautiño*, 71 D.P.R. 248, 253 (1950). The **\*669** Supreme Court of the United States has also recognized said principle expressing the following:

> [It is] a cardinal rule that a statute is to be read as a whole since the meaning of statutory language, plain or not, depends on context. *King v. St. Vincent's Hospital*, 502 U.S. 215, 221 (1991); *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989). See, also, *Shell Oil Co. v. Iowa Dept. of Revenue*, 488 U.S. 19, 26 (1988).

Guided by the established principles, and to clear up any doubts with regards to the scope of Sec. 188(a)(2) of the WIA, *supra*, we shall proceed to analyze it in context.

[3] In 1998, the United States Congress enacted the WIA for the purpose of promoting investment in workforce fostering employment and retention in employment, as well as improving occupational training of participants as a mechanism to reduce unemployment. 29 U.S.C.A. sec. 2811.[7] See, also: *Santana v. Gobernadora*, 165 D.P.R. 28, 34 n. 2 (2005); *Diversified Educ. Training v. City of Wichita*, 473 F. Supp.2d 1140, 1142 n. 5 (2007).

[4] The WIA provides the framework for a comprehensive system of investment in the workforce and authorizes the assignment of funds necessary to develop it. The

purpose of the system is to advise participants — adults, displaced workers and young people—[8] in the search **\*670** for information and services to handle their careers through the operation of *one-stop centers*. 29 U.S.C.A. sec. 2841. In these centers, users can access *core services*, 29 U.S.C.A. sec. 2864(d)(2), or they can be referred for other types of assistance, such as intermediate or training services. 29 U.S.C.A. sec. 2841. Also, the WIA authorizes the governor of each state to create a state *workforce investment board* to assist them in development, *inter alia*, of a strategic five-year plan and in supervising the system. 29 U.S.C.A. secs. 2821–2822. Additionally, the Governor, taking into account the different criteria established in said law, shall designate *local workforce investment areas*, with their respective boards who shall develop a local plan that is consistent with the state plan, among other duties. 29 U.S.C.A. secs. 2831–2833. With said objectives, the funds are assigned in percentages according to the group of participants and they are divided mainly between local areas and state activities. 29 U.S.C.A. secs. 2852–2872.

Then Governor of Puerto Rico, Hon. Pedro Rosselló, enacted Executive Order 2000-06 in February 2000[9] for the purpose of administering WIA funds. Said Order appointed the Human Resource and Occupational Development Council of the Department of Labor and Human Resources of Puerto Rico[10] as trustee and administrator of said funds. See: *Santana v. Gobernadora* **\*671**, supra, pp. 34 and 41; *Santana v. Calderón*, 342 F.3d 18, 20 (1st Cir. 2003).

[5] In order to receive the WIA funds assigned to Puerto Rico, municipalities have organized Consortiums in accordance with Art. 2.001(p) of Law No. 81, *supra*.[11] Thus, it is unquestionable that ASIFAL is an intermunicipal entity—organized by the municipalities of the region in accordance with Art. 2.001(p) of Law No. 81, *supra*— created to administer programs and employment opportunities and work training funded by the WIA.[12] In that sense, ASIFAL, in accordance with the *Code of Federal Regulations*, is a recipient of WIA funds, which the law designates *Local Workforce Investment Area grant recipient*.[13] 29 C.F.R. sec. 37.4.[14] **\*672**

[6] Taking the above as a starting point, Sec. 188(a)(2) of the WIA provides:

*Prohibition of discrimination regarding participation,*
*benefits and employment.*
No individual shall be excluded from participation in, denied the benefits of, subjected to discrimination under, or denied employment in the administration of or in connection with, any such program or activity because of race, color, religion, sex (except as otherwise permitted under title IX of the Education Amendments of 1972), national origin, age, disability, or political affiliation or belief. 29 U.S.C.A. sec. 2938(a)(2).

One can conclude from the language of this section that it does not exclude application to employees who work in the administration or who are related to the programs and activities funded in accordance with the WIA. The title of the provision suggests that the prohibition against discrimination contained therein includes participation, benefits and employment. Furthermore, the aforementioned section begins by indicating that "no individual" should be excluded from participating, or be refused benefits or employment in programs subsidized by the WIA for the discriminatory reasons contained therein. By stating this, the prohibition is not limited solely to participants. On the contrary, it included persons who benefit or work in some program subsidized by the WIA. In fact, the phrase *employment in the administration of* may be interpreted to include employees of the entities that administer and distribute WIA funds.

Similarly, Section 181(c)(1) of the WIA, which covers violations under Section 188(a)(2) of the WIA, *supra*, suggests that the prohibition against discrimination contained in the aforementioned section extends to discriminatory practices against employees: **\*673**

Each State and local area receiving an allotment under this chapter shall establish and maintain a procedure for grievances or complaints alleging violations of the requirements of this chapter from participants and *other interested or affected parties*. (Emphasis Added.) 29 U.S.C.A. sec. 2931(c)(1).

Furthermore, said section in its paragraph (c)(3)(C) provides the following as one of the remedies granted in the event of a violation of a provision of the WIA:

[R]einstatement of an employee, payment of lost wages and benefits, and reestablishment of other relevant terms, conditions, and privileges of employment. 29 U.S.C.A. sec. 2931(c)(3)(C).

Furthermore, the regulations applicable to Sec. 188 of the WIA, *supra*,[15] as enacted by the federal Secretary of Labor in accordance with paragraph (e) of said Section,[16] point to the inclusion of employees in the discriminatory prohibition. Said regulatory body requires that recipients of WIA funds (in this case the ASIFAL Consortium) establish a local

grievance procedure. 29 C.F.R. secs. 3723 and 3776.[17] As part of this procedure, recipients must inform their employees initially and continuously as to their anti-discriminatory practices. 29. C.F.R. sec. 37.30. Also, "any person" that is harmed by any action included in Section 188 may file a Complaint before the CRC or before the fund recipient: **\*674**

> *Any person* who believes that he or she has been subjected to discrimination may file a complaint either with the recipient or the CRC. (Emphasis Added.) 29 C.F.R. secs. 37.70–37.72.

Furthermore, Sec. 37.16(a)(1) of the *Code of Federal Regulations*, 29 C.F.R. sec. 37.16(a)(1), establishes that as a condition to receive WIA funds, each applicant of said funds must ensure in their request that they shall comply with the anti-discriminatory provision subsumed in Sec. 188 of the WIA, *supra*, as to which the following is stated:

> As a condition to the award of financial assistance from the Department of Labor under Title I of the WIA, the grant applicant assures that it will comply fully with the nondiscrimination and equal opportunity provisions of the following laws: Section 188 of the Workforce Investment Act of 1998(WIA), which prohibits discrimination against *all individuals* in the United States on the basis of race, color, religion, sex, national origin, age, disability, political affiliation or belief, and against beneficiaries on the basis of either citizenship/status as a lawfully admitted immigrant authorized to work in the United States or participation in any WIA Title-financially assisted program or activity. (Emphasis Added.) Sec. 31.16(a)(1) del Code of Federal Regulations, *supra.*

Similarly, Sec. 37.30 of the *Code of Federal Regulations*, supra, states:

> The recipient must not discriminate in any of the following areas: ... [M]aking employment decisions in the administration of, or in connection with, such a program or activity.

This makes our conclusion that the prohibition against discrimination against recipients of WIA funds protects employees.

[7] It should be noted that the Council for Occupational Development and Human Resources of the Department of Labor and Human Resources of Puerto Rico issued Administrative Memorandum Number WIA-3-2003 on October 31, 2003, which makes reference to Sec. 188 of the WIA, *supra.* It focuses on all local areas of investment **\*675** —known under Federal Law as *Local Workforce Investment Area*— on its Executive Directors and on everyone who receives funds under Title I of the WIA. Said memo expresses, *inter alia*, that

> [i]t is prohibited that any person who receives federal financial aid under Title I of the WIA discriminate against any individual, in Puerto Rico or in the United States, who requests participation in the different training, search, and employment placement activities and programs or who is employed under any of the programs financed with WIA funds, based on race, color, religion, sex, national origin, age, physical or mental disability, political affiliation or beliefs.[18]

As we can observe, this memo establishes that the public policy and procedures that are issued in accordance with the WIA and its regulations to implement the no discrimination and equal opportunity policy applies to anyone who was employed under any of the programs financed under the WIA.[19]

In light of the foregoing, we deduce that the WIA and its applicable regulations, the prohibition against discrimination covered in the cited Sec. 188(a)(2) extends both to discriminatory practices against participants and to employees of programs financed in accordance with said statute. Therefore, this provision applies to Ms. Semidey since she is an employee of the ASIFAL Municipal Council.

B. Having resolved the controversy related to the scope of Sec. 188(a)(2) of the WIA, *supra*, as to its application both to employees and to participants of the programs funded by said law, we must decide whether the WIA establishes an exclusive **\*676** jurisdiction procedure to channel claims of an employee who requests a remedy under the Constitution and state legislation based on alleged employment discrimination on the basis of politics, age and physical condition.

[8] In the past we have expressed ourselves as to the problem of determining the forum with jurisdiction to consider a controversy. This is why the doctrine of *primary jurisdiction* has been developed through case law, as to which we have stated the following:

> The doctrine of primary jurisdiction covers original jurisdiction to consider a claim. It consists of two (2) branches: primary exclusive and primary concurrent jurisdiction. Under the former, the law provides that the administrative entity shall have initial exclusive jurisdiction to examine the claim. Concurrent jurisdiction arises when the law permits the claim to be brought[,] either in the administrative or in the judicial forum. *Rivera Ortiz v. Mun. de Guaynabo*, 141 D.P.R. 257, 267 (1996). See, also, M.A. Velázquez Rivera, *Análisis del término 2000–01: del Tribunal Supremo de Puerto*

*Rico: derecho administrativo*, 71 (No. 2) Rev. Jur. U.P.R. 299, 305–306 (2002).

[9] In *Ferrer Rodríguez v. Figueroa*, 109 D.P.R. 398, 402 (1980), we clarified that the doctrine of *primary jurisdiction* truly applies when there is concurrent jurisdiction between the administrative and the judicial forums. See, also: *Rivera Ortiz v. Mun. de Guaynabo*, supra, p. 267; *Aguilú Delgado v. P.R. Parking System*, 122 D.P.R. 261, 266 (1988). This is due to the fact that when an agency and courts have concurrent jurisdiction, the need to harmonize adjudicative roles really arises. Thus, the doctrine only helps us to conclude which of the avenues, administrative or judicial, should be taken in the first place, despite both forums having legal jurisdiction. *Rivera Ortiz v. Mun. de Guaynabo*, supra.

[10–11] If the statute grants jurisdiction to the administrative entity, it involves statutory (exclusive) jurisdiction. D. Fernández Quiñones, **\*677** *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 2nd ed. rev., Bogotá, Ed. Forum, 2001, Sec. 8.4, p. 437 n. 1. The concept of *statutory or exclusive jurisdiction* is related to concurrent primary jurisdiction but it is different as to its scope and nature. See R.J. Pierce, Jr., *Administrative Law Treatise*, 4th ed., New York, Aspen Law & Business, 2002, T. II, Sec. 15.3, p. 982. Exclusive jurisdiction involves situations in which the doctrine of *primary concurrent jurisdiction* does not apply because the law itself clarifies that the latter does not exist. That is to say, the statute itself establishes exclusive jurisdiction. See *Colón v. Méndez, Depto. Recursos Naturales*, 130 D.P.R. 433 (1992). In said cases, we are dealing with a legislative mandate. Thus when a statute expressly grants jurisdiction on an administrative entity as to a given type of subject, courts shall not have authority to initially hear the matter. *Rivera Ortiz v. Mun. de Guaynabo*, supra, p. 268. Of course, primary exclusive jurisdiction does not cancel out judicial review subsequent to the entity's decision. *Rivera Ortiz v. Mun. de Guaynabo*, supra; *Junta Dir. Cond. Montebello v. Fernández*, 136 D.P.R. 223 (1994). At the end of the day, the primary responsibility to decide the jurisdictional question falls on courts. D. Fernández Quiñones, *Análisis del término 2001–02 del Tribunal Supremo de Puerto Rico: derecho administrativo*, 72 (No. 3) Rev. Jur. U.P.R. 355, 361 (2003).

In the instant case, it is essential to determine whether or not the doctrine of statutory or primary exclusive jurisdiction applies.

The argument submitted by the defendant can be reduced to determining whether Sec. 188(a)(2) of the WIA, *supra*, establishes an exclusive administrative procedure in cases in which a party who receives WIA funds is alleged to have committed a discriminatory practice that is prohibited by said section. See *Rovira Palés v. P.R. Telephone Co.*, 96 D.P.R. 47, 48 (1968). **\*678**

[12] Furthermore, do to the fact that we are considering a federal law that we had not interpreted and as to which the section at issue—Sec. 188(a)(2)— also has not been interpreted by the federal Supreme Court, we must also examine whether when enacting the WIA, the United States Congress had the intention of occupying the field. That is to say, whether said law created a jurisdictional obstacle under the *field preemption* doctrine,[20] which prevents state courts from considering claims of discrimination under Sec. 188(a)(2) of the WIA, *supra.* Therefore, in this petition the decision as to exclusive jurisdiction is part and parcel to the decision as to field preemption. If we decide that the WIA establishes an exclusive administrative procedure to consider actions such as the instant case, the field would be occupied and we would lack subject matter jurisdiction[21] to consider the petition filed herein as it would be a federal matter.[22] **\*679**

[13] The Supreme Court of the United States has decided that state courts may assume subject matter jurisdiction for a federal cause of action except when there is a statute of Congress providing otherwise or when there is an incapacitating incompatibility between the federal lawsuit and its adjudication in state courts. *Leyva et al. v. Aristud et al.*, 132 D.P.R. 489, 499–500 (1993); *Howlett v. Rose*, 496 U.S. 356 (1990); *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–478 (1981); *Martinez v. California*, 444 U.S. 277, 283, n. 7 (1980). Based on this, as a general rule state courts have jurisdiction to consider any matter under state law and concurrent jurisdiction with federal courts to consider matters that arise under the canopy of federal laws. *González v. Mayagüez Resort & Casino*, 176 D.P.R. 848 (2009); *Rodríguez v. Overseas Military*, supra; *Cintrón v. Díaz*, 159 D.P.R. 314, 319 (2003); *Roberts v. U.S.O. Council of P.R.*, 145 D.P.R. 58, 69 (1998); *Acevedo v. Srio. Servicios Sociales*, 112 D.P.R. 256, 259 (1982); *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 823 (1990); *Gulf Offshore Co. v. Mobil Oil Corp.*, supra, p. 477. *A contrario sensu*, state courts lack jurisdiction over a federal matter only when the Congress of the United States expressly provides that jurisdictional exclusivity or when Congress's intention to deprive state courts of jurisdiction over said federal matter is

SLG Semidey Vazquez v. ASIFAL, 177 D.P.R. 657 (2009)

2009 TSPR 184

clear. *Cintrón v. Díaz*, supra. That is to say, "[f]ederal exclusive jurisdiction is a matter that is extremely exceptional." Id *Acevedo v. Srio. Servicios Sociales*, supra.

The doctrine of field preemption has been developed to avoid regulatory conflicts and thus promote uniform **\*680** policy. *Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517, 523 (1977). We have stated as to said doctrine that jurisdictional problems have two branches, to wit: (1) the legislative and (2) the adjudicative. Thus, in *González v. Mayagüez Resort & Casino*, supra, citing the decision in *Rodríguez v. Overseas Military*, supra, p. 279, we indicated that "the concept of 'legislative jurisdiction' refers to who has the authority to regulate, through legislation, a given subject, fact or situation. ... '[L]egislative jurisdiction' refers to 'what law applies' to a given controversy. ... Meanwhile, on the other hand, 'judicial jurisdiction' refers to which court (state or federal) is authorized to consider the disputes that arise in the enclave."

Having laid out the precepts as to exclusive primary jurisdiction and field preemption, we must analyze the WIA under the lens of said rules to determine whether the claims that arise under Sec. 188(a)(2) of the WIA, *supra*, must be handled by the administrative procedure established by said law and its applicable regulation or, *a contrario sensu*, they can be processed under the state judicial avenue.

C. In short, ASIFAL argues that the WIA establishes a procedure of exclusive primary jurisdiction when it is analyzed along with its applicable regulations. To support its claim, ASIFAL argues that the *Code of Federal Regulations* establishes said conclusion when it provides that the federal Secretary of Labor shall appoint an officer to consider discrimination complaints filed against employees and participants of programs funded under the WIA, who shall also be in charge of the CRC; and that in accordance with these norms, anyone who is harmed by any activity included in Sec. 188(a)(2), *supra*, shall file a complaint before the CRC or the Consortium, who shall refer it to the CRC. It also argues that, under Sec. **\*681** 37.85(c)(2) of the *Code of Federal Regulations*, supra, the CRC is the entity with exclusive jurisdiction which shall hear complaints according to the procedure described therein. We shall consider said arguments separately.

[14] As we mentioned, Sec. 188(a)(2) of the WIA, *supra*, provides that no individual shall be discriminated against based on political belief or affiliation, age, among others:

> No individual shall be ... subjected to discrimination, ... because of age, disability, or political affiliation or belief.

As to this, the WIA provides which are the actions that the federal Secretary of Labor shall carry out when a state or WIA fund recipient does not voluntarily comply with said Section, or achieve voluntary compliance therewith by the offender (recipient) within a given period of time. Sec. 188(b) and (c) of the WIA, 29 U.S.C.A. secs. 2938(b) and (c). Specifically, the federal Secretary of Labor may refer the case to the *Attorney General* with a recommendation to file a civil lawsuit or take any other legally appropriate action themselves. When the federal Secretary of Labor, in their discretion, refers the case to the *Attorney General* or when the latter has reason to believe that the state or other fund recipient is committing discriminatory actions in accordance with Section 188(a)(2), *supra*, they may file a civil lawsuit in any United States District Court. Sec. 188(b) and (c) of the WIA, *supra*.

[15] On the other hand, the *Code of Federal Regulations* requires recipients of federal funds to establish a local grievance procedure. Secs. 3723 and 3776 of the *Code of Federal Regulations*, supra.[23] Said recipients **\*682** shall appoint an *Equal Opportunity Officer* who shall serve as a liaison between the recipient (Consortium) and the CRC, and they shall be in charge of ensuring that the anti-discrimination provisions of the WIA are not breached. 29 C.F.R. secs. 37.23 and 37.25. Therefore, any person harmed by an action included in Section 188 of the WIA, *supra*, shall submit a Complaint before the CRC or the recipient, who shall submit the action to the CRC. Secs. 37.70–37.72 of the *Code of Federal Regulations*, supra. However, if the director of the CRC finds that there has been a violation, they shall notify the recipient of WIA funds as to the steps that must be taken within a given period of time in order to voluntarily comply with what is required. 29 U.S.C.A. sec. 37.94. However, when the director of the CRC believes that compliance cannot be ensured by voluntary means, then they shall: (1) issue a final determination; (2) refer the case to the *Attorney General* with a recommendation for a civil action to be filed, or (3) take any other legally appropriate action. 29 C.F.R. sec. 37.99. If the director issues a final determination, it shall contain notice that if the recipient does not comply within the ten days after having received the final determination, this may entail one or more of the following consequences: WIA funds may be terminated, discontinued or withheld in whole or in part: the federal Secretary of Labor may refer the case to the Department of Justice to request that legal action be taken against the recipient; the

SLG Semidey Vazquez v. ASIFAL, 177 D.P.R. 657 (2009)

2009 TSPR 184

Secretary may take any other legally appropriate action. 29 C.F.R. sec. 37.100. Lastly, if the Secretary is not able to obtain compliance through a final determination, the only remedy available to them is referring the case to the *Attorney General* with a recommendation to file the appropriate civil action. 29 C.F.R. sec. 37.110. **\*683**

[16] In short, neither the WIA nor its regulations go further than granting the federal Secretary of Labor or the *Attorney General* (when the former refers the case to the latter) taking discretionary actions. Neither the WIA or applicable regulations establish that a person can individually demand their rights when they are violated by discriminatory actions prohibited by the WIA. See *Borrero-Rodriguez v. Montalvo-Vazquez*, 275 F. Supp.2d 127, 132 (D.P.R. 2003). Thus, even though the regulations enacted by the federal Secretary of Labor to implement the anti-discriminatory provisions of the WIA establish administrative mechanisms focused on ensuring compliance by the recipient of WIA funds, if the recipient refuses to comply, the only remedy available is termination, denial or witholding of funds or a potential referral to the *Attorney General* with a recommendation to file a civil action. Id. That is to say, the WIA does not provide the victim of the alleged discrimination the right to sue. Id Thus, the *Attorney General* can decide whether or not to file a civil action to remedy the alleged discrimination when the federal Secretary of labor refers the case. Id. Thus, the decision of whether or not to file a civil lawsuit is within the discretion of the *Attorney General* and not of the victim of the alleged discrimination.

Therefore, we believe that the administrative mechanisms implemented by the federal Secretary of Labor do not replace or substitute a private action under the Constitution or state legislation due to the fact that neither the law nor its regulations provide a private remedy through which an injured person can remedy their harm. *A fortiori*, we do not see any incompatibility between the action filed by plaintiff and the administrative framework predicated on the WIA.[24] **\*684**

Furthermore, defendants argue that when analyzing Sec. 188(a)(2) of the WIA, *supra*, jointly with Sec. 37.85(c)(2) of the *Code of Federal Regulations*, supra, we can glean the intention of the United States Congress to establish an exclusive primary jurisdiction procedure before the CRC. Said section provides as follows:

> [w]here the complaint alleges discrimination on a basis that is prohibited by Section 188 of the WIA, but not by any civil rights laws enforced by the Federal grantmaking agency, then CRC has sole jurisdiction over the complaint, and will retain the complaint and

process it pursuant to this part. Such bases generally include religion, political affiliation or belief, citizenship, and/or participation in a WIA Title I-financially assisted program or activity. Sec. 3785(c)(2) del *Code of Federal Regulations*, supra.

Firstly, said precept does not contain any statement that indicates or affirms without a doubt that the CRC shall have exclusive **\*685** jurisdiction over the disputes arising under Sec. 188(a)(2), *supra*. In effect, what Sec. 37.85 of the *Code of Federal Regulations*, 29 C.F.R. sec. 37.85, discusses is the circumstances in which the Director of the CRC can refer, under exceptional circumstances, a discrimination claim to other authorities apart from the CRC. Thus, for example, Sec. 37.85(b) of the *Code of Federal Regulations* indicates the following:

> Where the only allegation in the complaint is a charge of individual employment discrimination that is covered both by the WIA or this part and by one or more of the laws listed below, then the complaint is a "joint complaint", and the Director may refer it to the EEOC [Equal Employment Opportunity Commission] for investigation an conciliation .... 29 C.F.R. 37.85(b).

Said section discusses complaints when the only discrimination allegation is covered by both the WIA and any of the following federal laws: Title VII of the Civil Rights Act of 1964, Equal Pay Act of 1963, Age Discrimination in Employment Act of 1976, Title I of the American with Disabilities Act of 1990. Under those circumstances, the Complaint is considered a *joint complaint* and the director of the CRC can refer it to the *Equal Employment Opportunity Commission* (EEOC) for investigation and conciliation.

Nevertheless, unlike what is established in Section 37.85(b), *supra*, where the CRC shares jurisdiction with the EEOC (*joint complaint*), when there is a Complaint based on discrimination in accordance with Sec. 37.85(c)(2) of the *Code of Federal Regulations*, supra, jurisdiction falls solely on the CRC. See *Borrero-Rodriguez v. Montalvo-Vazquez*, supra, pp. 131–132. Therefore, we believe that the United States Congress has not had the intention of establishing an exclusive procedure that prevents a victim of alleged political discrimination filing an action under the Constitution and state legislation. Rather, what we can interpret is that if the victim decides to file a discrimination **\*686** claim through administrative channels— as provided by the WIA and its applicable regulations— then, depending on the nature of the claim, the CRC shall have jurisdiction, or both the CRC and the EEOC shall have it.

[17] Even more importantly for our deliberation is Sec. 181(c)(4) of the WIA, 29 U.S.C.A. sec. 2931(c)(4). As we mentioned, this provision covers violations under Sec. 188(a)(2) of the WIA, *supra*. It establishes that the

remedies available for violations of the WIA should not be interpreted to prevent the injured party or petitioner from seeking a remedy authorized under another federal, state or local law:

> ... shall not be construed to prohibit a grievant or complainant from pursuing a remedy authorized under another Federal, State, or local law .... Sec. 181 of the WIA, *supra.* See, also: *Torres Ramos v. Consorcio de la Montaña*, 286 F. Supp.2d 126, 129 (D. P.R. 2003); *Greo v. Trujillo*, 270 F. Supp.2d 189, 194 (D. P.R. 2003); *Caraballo Seda v. Rivera*, 261 F. Supp.2d 76, 80 (D. P.R. 2003).

As can be observed, the language of said section explicitly shows that the intent of the United States Congress was not to occupy the field or to establish an exclusive primary jurisdiction procedure that prevents an injured party or petitioner from obtaining a judicial remedy under state law.

The legislative history of the WIA also does not establish that the United States Congress had the implicit intention of occupying the field with said legislation or of establishing an exclusive primary jurisdiction procedure in cases where discrimination is alleged under the aforementioned Section 188(a)(2) of the WIA, *supra.* See,: H.R. Rep. 105-659 (July 29, 1998) (reprinted in 1998 U.S.C.A.N. p. 332); H.R. Rep. 105–93 (May 8, 1997); 144 Cong Rec S 4252 (1998); 144 Cong Rec S 9489 (1998). Also, after having reviewed the laws that preceded the WIA, we have not **\*687** found any provision that points to the pretension to occupy the field or to establish an exclusive primary jurisdiction procedure in cases of discrimination. See: *Job Training Partnership Act* (JTPA), 29 U.S.C.A. secs. 1501–1792(b); *Comprehensive Employment and Training Act* (CETA), 29 U.S.C.A. secs. 801–999. See, also, *Torres v. Maldonado*, 257 F. Supp.2d 477 (2003).

Nevertheless, ASIFAL states in its brief that several federal circuits have decided that the administrative remedies provided in the *Comprehensive Employment and Training Act* (CETA) and in the *Job Training Partnership Act* (JTPA) ruled out any potential cause of action under other laws (*e.g.*, Sec. 1983 of the Federal Civil Rights Act, *infra*). Specifically, ASIFAL refers to the following cases: *CETA Workers's Org. Committee v. City of New York*, 617 F.2d 926, 931–934 (2nd Cir. 1980); *Uniformed Firefighters Ass'n v. City of New York*, 676 F.2d 20, 22 (2nd Cir. 1982); *AFSCME Local 506 v. Private Industry Council*, 942 F.2d 376, 381 (6th Cir. 1991); *New Beckley Min. v. International Union, UMWA*, 18 F.3d 1161, 1166 (4th Cir. 1994).

In that sense, we must point out that other federal circuits have interpreted some of these cases in a varied manner. Thus, for example, in *Davis v. Mobile Consortium of CETA*, 857 F.2d 737, 741 (11th Cir. 1988), the court decided that what *Uniformed Firefighters Ass'n v. City of New York*, supra, intended to mean was that the *Comprehensive Employment and Training Act* (CETA) prevented actions based on Sec. 1983 of the Federal Civil Rights Act, *infra*, when that action was brought under the *Comprehensive Employment and Training Act* (CETA), but not when it was based on a constitutional claim. Similarly, in *Black v. Broward Employment and Training Admin.*, 846 F.2d 1311, 1312–1314 (11th Cir. 1988), the district court decided that when the action was based on the federal Constitution or on a federal **\*688** statute other than the *Comprehensive Employment and Training Act* (CETA), then there was no need to ignore administrative remedies prior to filing a judicial claim. *Page v. DeLaune*, 837 F.2d 233, 240 (5th Cir. 1988), indicated that *Uniformed Firefighters Ass'n v. City of New York*, supra, held that the *Comprehensive Employment and Training Act* (CETA) did not provide an exclusive remedy to hear constitutional violations.

Furthermore, in *AFSCME Local 506 v. Private Industry Council*, supra, interpreting Sec. 1553(b)(3)(B) of the *Job Training Partnership Act* (JTPA), 29 U.S.C.A. sec. 1553(b)(3)(B) —which protected regular employees from being displaced by participants of programs funded by the JTPA— the circuit court believed that there was no implicit right to pursue a private cause of action under said section of law. However, in *Torres v. Maldonado*, supra, p. 483, the Federal District Court for the District of Puerto Rico stated that *AFSCME Local 506 v. Private Industry Council*, supra, considered a claim based strictly on the *Job Training Partnership Act* (JTPA). Thus it concluded that, since in the case that it was considering the claim was constitutional, the *Job Training Partnership Act* (JTPA) did not prevent a cause of action based on Sec. 1983 of the Federal Civil Rights Act, *infra. Torres v. Maldonado*, supra. See, also, *Caraballo Seda v. Javier Rivera*, supra, pp. 82–83. That same distinction is applicable in the case of *New Beckley Min. v. International Union, UMWA*, supra,[25] since there was no constitutional claim in that case.

In short, even the caselaw that interpreted laws that came before the WIA established unequivocally that said laws established an exclusive administrative framework that prevented filing a judicial **\*689** lawsuit based on a constitutional claim. For this reason, we cannot endorse ASIFAL's argument as to this issue, especially when in the instant case the cause of action raised by

plaintiff is constitutional related to the alleged violation of civil rights under the Constitution of Puerto Rico.

Furthermore, it must be noted that the Supreme Cout of the United States has yet to interpret Sec. 188(a)(2) of the WIA, *supra.* However, the Federal District Court for the District of Puerto Rico has had the opportunity to render judgment as to said section on more than one occasion, and we should not rule out its persuasive weight to decide the dispute at bar. For example, in *Greo v. Trujillo*, supra, the district court heard a Complaint filed by employees of the South East Consortium of Puerto Rico. They sued the Consortium for alleged political discrimination under the Fourth Amendment of the federal Constitution, U.S. Const., L.P.R.A., Volume 1, and Sec. 1983 of the Federal Civil Rights Act, 42 U.S.C.A. sec. 1983.[26] Defendant requested dismissal of the action filed arguing that the court lacked subject matter jurisdiction because the administrative procedure established by the WIA was the exclusive remedy for discrimination claims brought under Sec. 188(a)(2) of said statute. In turn, plaintiff answered the motion to dismiss alleging that the statutory language of the WIA did not expressly prevent a lawsuit under Sec. 1983 of the Federal Civil Rights Act, *supra*, noting the following:

> In sum, the WIA does not contain any particular phraseology that unmistakably evinces Congressional intent to foreclose a § 1983 claim or require exhaustion of the procedures available under it's regulations. ...
>
> ........
>
> The WIA's legislative history is silent with regards to discrimination claims, exhaustion of grievance procedures, or preclusion of §1983 claims. ...
>
> ........
>
> ... The statute does not expressly manifest Congress' intent to foreclose such claims; nor can the Court find an implied congressional intent to do so. The Court may not lightly infer or conclude that Congress intended to preclude § 1983 claims to remedy the deprivation of federally secured rights subject to WIA. *Greo v. Trujillo*, supra, pp. 195 y 196.

The Federal District Court for the District of Puerto Rico reached the same conclusion in *Caraballo Seda v. Javier Rivera*, supra; *Torres Ramos v. Consorcio de la*

*Montaña*, supra, and *Borrero-Rodriguez v. Montalvo-Vazquez*, supra. It should be noted that in said cases, like in *Greo v. Trujillo*, supra, the action filed by plaintiff was based on Sec. 1983 of the Federal Civil Rights Act, *supra.* As to this, ASIFAL, as well as the Attorney General, argue that said decisions should not be applied to the instant case since plaintiff failed to raise or allege a cause of action under Sec. 1983 of the Federal Civil Rights Act, *supra.*

However, the main reason to cite these precedents is that all of them have engaged in an exegesis, *lato sensu*, of Sec. **\*691** 188(a)(2) of the WIA, *supra.* Thus, even though the law or provision as to which the Complaint was based in said cases and that support the instant case are different, the central issue in both scenarios has been to determine whether the WIA prevents that a judicial claim evade the administrative channel when discrimination is alleged due to a reason contemplated in its cited Sec. 188(a)(2). Therefore, even though in the instant case the action filed by plaintiff was based essentially on the Constitution and local laws, and in the cited cases it was based on Sec. 1983 of the Federal Civil Rights Act, *supra*, the exercise of legal interpretation has been the same one performed by the district court in the recently listed cases due to the fact that the teleology in both contexts has been homogenous: examining the WIA, its applicable regulations and legislative history to determine whether the United States Congress had the intention of preventing discrimination claims based on said section to avoid the administrative channel provided by the law with an independent judicial action.

[18] It should also be noted that in both contexts (in the instant case and in the cited district court cases) the etiology of the action filed is the alleged violation of a constitutional right by a discriminatory action that is, essentially, political. Political discrimination is an action that violates constitutional rights that are recognized both by the Federal Constitution and by the Constitution of Puerto Rico. Under the Constitution of the United States, the matter is contained in the First Amendment, IV Amendment, U.S. Const, L.P.R.A., Volume 1 —see *Board of Comm'rs, Nabaunsee Cty. v. Umbehr*, 518 U.S. 668 (1996)— and under the Constitution of Puerto Rico it is addressed directly according to Sec. 1 of Art. II of our Constitution.

[19] Furthermore, Sec. 1983 of the Federal Civil Rights Act, *supra*, is a mechanism for citizens to claim the rights that the Constitution **\*692** and the laws of the United States grant with regards to persons who abuse their

power when they act under their state authority. *Leyva et al. v. Aristud et al.*, supra, p. 500; *Graham v. Connor*, 490 U.S. 386, 394 (1989). Thus, in the United States actions have been filed under the aforementioned section in violation of the First Amendment when it is alleged that there has been political discrimination. See: *Bailey v. Town of Evans, New York*, 443 F. Supp.2d 427 (W.D. N.Y. 2006); *Santiago-Rodriguez v. Rey*, 404 F. Supp.2d 400 (D. P.R. 2005).

Therefore, we see that both in the district cases as well as in the instant case, although the claim is pursued through heterogenous means, it basically involves the same thing: an alleged violation of constitutional rights.

For all of the foregoing, we gather that the WIA does not establish an exclusive jurisdiction procedure to consider claims arising under the canopy of Sec. 188(a)(2), *supra.* Similarly, we conclude that the WIA does not occupy the field since said pretension (as to Congress's intent) is neither express or implicit. Therefore, we rule that state courts have concurrent jurisdiction with CRC and federal courts to handle matters such as the case *sub judice.* Thus we reach the same conclusion as the intermediate appellate court but for other reasons.[27] **\*693**

### III

In accordance with the above, *we affirm the judgment issued by the Court of Appeals reversing the Court of First Instance. Therefore, we remand the case to the Court of First Instance to decide on the merits all of the controversies raised in accordance with what is decided herein.*

*Judgment shall be entered accordingly.*

### Footnotes

[1]     The six member municipalities of the South Central Workforce Investment Consortium (ASIFAL) are: Barranquitas, Salinas, Coamo, Santa Isabel, Juana Díaz and Naranjito.

[2]     Exhibit C of Appendix 1 of the *Certiorari* Petition, p. 42.

[3]     Sec. 1 of Art. II of our Constitution provides as follows:

        "The dignity of a human being is inviolable. All men are equal before the law. No discrimination may be established on the basis of race, color, sex, birth, origin or social condition, or political or religious ideas." Const. Commonwealth of Puerto Rico, L.P.R.A, Volume 1, ed. 2008, p. 272.

        Furthermore, Sec. 20 of said article provides, as relevant to the Complaint:

        "The Commonwealth of Puerto Rico also recognizes the existence of the following human rights: ... The right of all persons to social protection for unemployment, sickness, old age or physical disability." Id, p. 381.

[4]     Exhibit C of Appendix 1 of the *Certiorari* Petition, pp. 4–5.

[5]     We must point out that on August 26, 2005, ASIFAL and the other defendant municipalities adopted the arguments raised by the Municipality of Juana Díaz in its motion to dismiss.

[6]     In Sec. 37.4 of the *Code of Federal Regulations*, supra, the CRC is defined as follows: "... the Civil Right Center, Office of the

2009 TSPR 184

Assistant Secretary for Administration and Management, U.S. Department of Labor."

7      Sec. 106 of the WIA, 29 U.S.C.A. sec. 2811 states the following:

"The purpose of the WIA is to provide workforce investment activities, through statewide and local workforce investment systems, that increase the employment, retention, and earnings of participants, and increase occupational skill attainment by participants, and, as a result, improve the quality of the workforce, reduce welfare dependency, and enhance the productivity and competitiveness of the Nation."

8      The purpose of the law is universality of employment services. For that reason, anyone who is over eighteen years of age is eligible for essential services. 29 U.S.C.A. sec. 2801(1). Nevertheless, there are some specific requirements in order to be a beneficiary of intensive or entertainment services. 29 U.S.C.A. sec. 2864(d)(3)-(4). Additionally, displaced workers are eligible, 29 U.S.C.A. sec. 2801(9), and (2) young persons between fourteen and twenty-one years of age of low income who comply with one of the six legally-established criteria, 29 U.S.C.A. sec. 2801(13), or other provisions. 29 U.S.C.A. sec. 2854(c)(5).

9      Executive Order 2000-06 states the following:

"The Executive Director of the Occupational Development and Human Resources Council shall be responsible and accountable to the State Board for the receipt, custody an[d] disbursement of the federal funds received pursuant to the WIA and shall post fidelity bond prescribed by the laws of Puerto Rico for public employees." See *Santana v. Gobernadora,* 165 D.P.R. 28, 41 n. 6 (2005).

10     The current Occupational Development and Human Resource Council of the Department of Labor and Human Resources of Puerto Rico was created in accordance with Law No. 97 enacted on December 18, 1991, as amended, known as the Technological-Occupational Education System Act of the Commonwealth of Puerto Rico, 18 L.P.R.A. sec. 1581.

11     Art. 2.001(p) of Law No. 81 enacted on August 30, 1991 (21 L.P.R.A. sec. 4051(p)), states the following:

"To create intermunicipal entities that allow two (2) or more municipalities to identify common problems, plan and develop activities or services jointly, for the benefit of its inhabitants. Their organization shall be carried out through an intermunicipal agreement signed by the mayors, with the approval of at least two thirds (2/3) of the legislatures in question. Once the intermunicipal agreement is signed, it establishes what is known as a consortium, which shall have its own legal existence and personality, separate from the municipality, in accordance with the provisions for companies in the Civil Code of Puerto Rico of 1930. Said provisions shall apply as to anything that is not contrary to the provisions of this subtitle or other local and federal laws that govern it. The operation of intermunicipal consortiums shall be subject to the audit of the Office of the Comptroller of Puerto Rico." 21 L.P.R.A. sec. 4051 (Sup. 2008).

12     Exhibit C of Appendix 1 and 2 of the Certiorari Petition filed by the Attorney General before us, Complaint and Motion to Dismiss from September 6, 2004 and April 19, 2005, pp. 5 and 3, respectively.

13     *Local Workforce Investment Area Grant Recipient* "means the entity that receives WIA Title I financial assistance for a Local Workforce Investment Area directly from the Governor and disburses those funds for workforce investment activities". 29 C.F.R. sec. 37.4.

SLG Semidey Vazquez v. ASIFAL, 177 D.P.R. 657 (2009)
2009 TSPR 184

14    The *Code of Federal Regulations* defines *WIA fund recipient* as follows:

"[A]ny entity to which financial assistance under WIA Title I is extended, either directly from the Department or through the Governor or another recipient (including any successor, assignee, or transferee of a recipient), but excluding the ultimate beneficiaries of the WIA Title I-funded program or activity. In instances in which a Governor operates a program or activity, either directly or through a State agency, using discretionary funds apportioned to him or her under WIA Title I (rather than disbursing the funds to another recipient), the Governor is also a recipient. 'Recipient' includes, but is not limited to: ... (4) LWIA grant recipients." 29 C.F.R. sec. 37.4.

15    These regulations are included in the *Code of Federal Regulations*, 29 C.F.R. secs. 37.1–37.115.

16    Sec. 188(e) establishes the following:

"The Secretary shall issue regulations necessary to implement this section not later than one year after August 7, 1998. Such regulations shall adopt standards for determining discrimination and procedures for enforcement that are consistent with the Acts referred to in a ... subsection (a)(1) of this section, as well as procedures to ensure that complaints filed under this section and such Acts are processed in a manner that avoids duplication of effort." 29 U.S.C.A. sec. 2938(e).

17    As we expressed, it is uncontroverted from a review of the case file that the recipient of federal funds in the instant case is ASIFAL.

18    Exhibit D of Appendix 1 of the Certiorari Petition filed by the Attorney General before us, Administrative Memorandum Number WIA-3-2003 from October 31, 2003, p. 145.

19    Id, p. 146.

20    Art. VI of the Federal Constitution contains the so-called "Supremacy Clause," which provides that the Federal Constitution, federal treaties and federal laws shall be the supreme law of the Nation. Art. VI, U.S. Const., L.P.R.A., Volume 1. "It is based on this clause that the doctrine of 'field preemption' has been created. In short, this case law doctrine states that, even if Congress legislated in the exercise of the power that has been conferred to it in one of its enumerated powers, it shall not be deemed that said federal law has displaced legislation of a state as to that same issue unless the federal law expressly states otherwise. Displacement of a state law shall also be produced if the federal interest in the regulated issue is so essential that the existence of state law that conflicts in that same area cannot be justified." M. Velázquez Rivera, *Validez legal de la reglamentación por la Asamblea Legislativa de la importación, venta y posesión en Puerto Rico de perros de la raza Pit Bull*, 63 (No. 1) Rev. Jur. U.P.R. 1, 16 (1994).

21    "Subject matter jurisdiction is the power that a court has to consider the types of cases that are submitted to it." (Translation by the Court.) B.A. Garner, *Black's Law Dictionary*, 8th ed., Minnesota, Ed. West Publishing Co., 2004, p. 870.

2009 TSPR 184

Although the petitioner in the instant case did not raise the absence of subject matter jurisdiction as a defense to consider the claim based on the doctrine of field preemption, it is clear that the issue of subject matter jurisdiction has been raised. See Rules 10.2 and 10.8(c) of Civil Procedure, 32 L.P.R.A. Ap. III. In fact, under Rule 10.8(c) of Civil Procedure, *supra*, a claim may be dismissed as being the jurisdiction of an administrative agency or of the federal arena. R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 4th ed., San Juan, LexisNexis, 2007, Sec. 5109, p. 234. Therefore, we must decide whether local courts have the power or authority to decide the issue or the matter raised before us on the merits. See: *ASG v. Mun. San Juan*, 168 D.P.R. 337 (2006); *Rodríguez v. Overseas Military*, 160 D.P.R. 270, 277 (2003). We must not forget that with issues of subject matter jurisdiction, courts have the inescapable duty to consider their own jurisdiction and they can decide *motu proprio* that they do not have subject matter jurisdiction. See: *Pagán v. Alcalde Mun. de Cataño*, 143 D.P.R. 314, 326 (1997); *Vázquez v. A.R.Pe.*, 128 D.P.R. 513, 537 (1991).

As we already indicated a review of the case file shows—and it is undisputed— that the recipient of federal funds in this case is ASIFAL.

See *Borrero-Rodriguez v. Montalvo-Vazquez*, 275 F. Supp.2d 127, 132 (D. P.R. 2003), where the Federal District Court for the District of Puerto Rico, analyzing the WIA, concluded the following:

"The statute and its regulations do not go beyond discretionary actions that may be taken by the Secretary and by the Attorney General, if the matter is referred. There is no provision under the statute or its regulations for individual enforcement of the rights of an individual who claims a violation of his First Amendment rights due to political discrimination. Although the regulations promulgated by the Secretary to implement the non-discriminatory provisions of the WIA do establish administrative mechanisms meant to ensure compliance by the recipient, if compliance is not achieved because of the recipient's refusal, the only enforcement procedures are termination, denial or withholding of funds to the recipient or a possible referral of the matter to the Attorney General with a recommendation. These are the sole enforcement procedures. The statute does not give the alleged victim the right to sue. The Attorney General may or may not choose to file a civil action to remedy the alleged discrimination, if the matter is referred by the Secretary.

........

"A review of the administrative procedure implemented by the Secretary in this case leads us to conclude that they are insufficient to supplant sec. 1983 for neither the statute nor its regulations contain any private remedy through which aggrieved persons can seek redress."

In *Borrero-Rodriguez v. Montalvo-Vazquez*, supra, the judicial claim for alleged discrimination was brought under Section 1983 of the federal Civil Rights Act, *infra.* In that case it was ruled that the administrative procedure described in the WIA did not substitute an action under the aforementioned section because that procedure did not provide a private remedy through which the injured person could remedy their harm. Therefore, the Federal District Court for the District of Puerto Rico decided that this reflected that Congress's intention when enacting the WIA was not to close the doors on a judicial action brought under a different statute such as Section 1983 of the Federal Civil Rights Act, *infra.* Ultimately, the court did not dismiss the lawsuit that was filed. *Borrero-Rodriguez v. Montalvo-Vazquez*, supra.

Said case decided that there is no implicit right to bring a private action under Secs. 1551 and 1574 of the JTPA, 29 U.S.C.A. secs. 1551, 1574, which dealt with training at work and fiscal controls.

The aforementioned section states as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress .... For the purposes of this section, any Act of Congress

2009 TSPR 184

applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." Sec. 1983 of the Federal Civil Rights Act, 42 U.S.C.A. sec. 1983.

27    As to the second error assigned by ASIFAL, the only thing stated in the Judgment from the Court of First Instance is that the case was dismissed for lack of jurisdiction: "Since we lack jurisdiction and in accordance with the reasons indicated above we grant the Motion to Dismiss filed by codefendant Municipality of Juana Díaz and therefore DENY the motion in Opposition to Motion to Dismiss filed by plaintiff." Appendix 8 of the Certiorari Petition filed before us by the Attorney General, Judgment of the Court of First Instance, January 31, 2006, p. 4. Although the Court of First Instance succinctly, through *obiter dictum*, described the matter related to the employee's property interest in the duties of her position (related to the claim of due process of law due to deprivation of duties) and the matter related to the separate legal personality of the Consortium under Law No. 81, *supra* (related to the claim against municipalities that are members of ASIFAL), said court did not decide either of these two matters and limited itself to deciding that it lacked jurisdiction to consider the lawsuit.

In turn, the Court of Appeals, in its appellate role, exclusively decided the jurisdictional matter, which was what plaintiff respondent submitted for its review. The intermediate appellate forum considered the dispositive part of the Judgment issued by the Court of First Instance. In so doing, it respected the basic corollary of Appellate Law that an appeal or review regards the judgment or the decision that is appealed and not the grounds. *Pueblo v. Pérez Rodríguez*, 159 D.P.R. 554, 566 (2003); *Sánchez v. Eastern Air Lines, Inc.*, 114 D.P.R. 691, 695 (1983). As indicated by the former Governor of Puerto Rico and Professor Rafael Hernández Colón: "Appeals are made as to the decision, as to the dispositive portion and not as to the opinion that the court may issue and its conclusions. What causes a harm is the dispositive portion, that is, the decision, which is the subject of the petition." R. Hernández Colón, *op. cit.*, p. 373. Similarly, when exercising our reviewing authority as to this petition, we have limited ourselves to reviewing the judgment issued by the Court of Appeals.

For the reasons indicated, we believe that it is not appropriate to enter into the second error assigned by ASIFAL. The Court of Appeals decided the dispositive portion of the Judgment of the Court of First Instance and we have acted accordingly with regards to the Judgment issued by the Court of Appeals. We have decided the jurisdictional aspect.

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**CERTIFIED TRANSLATION**

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate

translation, to the best of my abilities, of the document in Spanish which I have seen.