[**CERTIFIED TRANSLATION of the following 5 pages**: Junta Dir. Cond. Montebello v. Fernandez, 1994 JTS 80 (1994)]

**1994 JTS 80, 136 D.P.R. 223, 1994 WL 909625 (P.R.)**

Board of Directors Montebello Condominium, plaintiff and petitioner,
vs.
Lourdes Fernández, defendant and third-party plaintiff respondent, vs. Ángel A. Rivera; Everett Belville et al; Board of Directors Montebello Condominium, plaintiffs and respondents, vs. Carlos Roger, Jelina Roger, etc., defendants and third-party plaintiffs respondents, vs. Ángel A. Rivera, Everett Belville et al, third-party defendants.

In the Supreme Court of Puerto Rico.
*Number:* CE-93-697

**Synopsis**

Judgment of Judge *Carmen Rita Vélez Borrás* (Carolina), dismissing defendants for lack of jurisdiction. *Reversed.*

*Mario A. Beauchamp*, attorney for petitioners; *Rafael Santos Del Valle*, attorney for respondents.

Associate Judge Fuster Berlingeri issued the opinion of the Court.

We must decide whether an interested party may initiate on its own judicial proceedings to enforce a valid order issued by the Department of Consumer Affairs or whether this is the exclusive prerogative of said department.

**I**

On October 9, 1990 Ludmilia Rivera Burgos, owner of apartment D-408 of the Montebello Condominium in Trujillo Alto filed a complaint before the Department of Consumer Affairs (D.A.Co., acronym in Spanish). She alleged that several condominiums had altered the façade of the building illegally.

In order to consider said complaint, D.A.Co. called the parties to an administrative hearing which was held on February 15, 1991. The hearing was attended by the petitioner, the Vice President of the Board of Directors of the condominium along with his attorney, the administrator of the condominium and another condominium owner. Based on the evidence presented and the agreed-upon stipulations, D.A.Co. decided that several owners of the condominium, of their own accord, had installed exterior windows and doors that were different from the original ones, had closed balconies and had expanded closed areas of the apartments, thus altering the common façade of the building in violation of Art. 15(d) of the Horizontal Property Act, 31 L.P.R.A. sec. 1291m(d). D.A.Co. also decided that theboard of directors of the condominium had not taken any action as to the aforementioned alterations and that it ignored the duty **\*226** established by Art. 38-D(a) and (i) of said law, 31 L.P.R.A. sec. 1293b-4(a) and (i), to take action against condominium owners who had ilegally altered the common façade.

On February 25, 1991 D.A.Co. issued a decision in which it ordered the Board of Directors of the condominium to take all of the legal actions necessary to put a stop to and correct the façade alterations in question. Additionally, D.A.Co. imposed the duty on the board to notify said resolution to all of the owners of the condominium. It advised that, if it failed to comply with said order, D.A.Co. could impose an administrative fine of up to $10,000.

The resolution of D.A.Co. concluded with a warning that the parties affected by it could request reconsideration within a period of twenty (20) days from notice of said resolution and informed the terms and procedures for judicial review of the decision.

Days later, on March 5, 1991, the president of the board of directors of the condominium wrote to the condominium owners. He sent them a copy of the D.A.Co. resolution; he reiterated the existing duty to correct the illegal façade alterations; he notified each condominium owner as to the specific illegal alteration that they had carried out, if any; he indicated that if they disagreed with what was ordered by D.A.Co. they had twenty (20) days to file a request for reconsideration before said agency; and he cited them to an extraordinary assembly of condominium owners on March 13 of that year, to determine the period within which the condominium owners in question had to correct the alterations.

The extraordinary assembly of the condominium owners was finally held on March 27, 1991, after a second notice. There, the legal representative of the president of

**Junta Dir. Cond. Montebello v. Fernandez, 1994 JTS 80 (1994)**

136 D.P.R. 223

the board, who had attended the hearing before D.A.Co., answered the questions of the condominium owners as to the **\*227** order of said department and reiterated their duty to comply with it or request reconsideration.

On April 29, 1991 the president of the board of directors wrote to the owners of the apartments that had carried out illegal alterations and requested that they correct said alterations within the subsequent ninety (90) days. He also reiterated their right to request reconsideration from D.A.Co. if they did not agree with the order to correct the alterations. On June 10, 1991, the president of the board wrote to the condominium owners in question to reiterate what was expressed in the previous letter.

Then, on August 19, 1991, the legal representative of the president of the board wrote to the owners of the aforementioned apartments to notify them that if they did not correct the illegal alterations within the following sixty (60) days, the board would take the necessary steps to enforce D.A.Co.'s order. This letter was sent via certified mail with return receipt to twenty-two (22) of the twenty-four (24) condominium owners who had made alterations to the façade. One of these had corrected the alterations and another had appeared before D.A.Co., therefore they were not sent said letter.

Despite the steps taken by the board of directors, the vast majority of the condominium owners who had made illegal alterations to the façade ignored D.A.Co.'s order and the various requests of the board. This gave rise to the board formally requesting D.A.Co.'s intervention on November 16, 1991 so that it enforce the Order from February 25. D.A.Co. never responded to said request for intervention.

On October 17, 1992, the Board of Directors of the Montebello Condominium once again requested D.A.Co.'s intervention in this matter. At that point two (2) condominium owners **\*228** had carried out the relevant repairs and three (3) had appeared before D.A.Co. Therefore, said department was asked to instruct the other nineteen (19) condominium owners to comply with the order.

D.A.Co. did not answer said second request for intervention made by the board of directors of the condominium either. However, in a letter sent to one of the condominium owners who appeared before D.A.Co., the Assistant Secretary for Legal Affairs of said agency informed the following to said condominium owner:

> "In your steps to enforce [D.A.Co.'s] order [from February 25, 1991] the Board of Directors cannot appear before the Department. Said

step should be taken before the courts. Appendix XVI, p. 22.

In light of D.A.Co.'s inaction, the board of directors of the condominium filed judicial proceedings to enforce the order and on March 17, 1993, it sued two (2) of the condominium owners who had not corrected their alteration of the façade or appeared before D.A.Co. in the Carolina Superior Court. The board requested in its complaints that the court order the defendants to correct their alterations of the façade and return it to its original status, plus payment of costs and attorney's fees.

Defendants, in turn, filed a third-party complaint against the members of the board of directors. They alleged that it had been selective in only suing some of the condominium owners for the alterations of the façade and alleged other unlawful actions.

After several procedural steps, the court of first instance dismissed all of the aforementioned actions as it considered that it lacked jurisdiction to consider them. The board of directors appeared before us through a petition for writ of *certiorari* filed on November 22, 1993, in which it alleged, in short, that the lower court had erred when it dismissed the two (2) original complaints **\*229** for lack of jurisdiction. On February 4, 1994, we issued a resolution giving the respondent a period to show cause why the judgment of the court of first instance as to dismissal of the two (2) original complaints should not be dismissed. Said party appeared on March 8, 1994.

**II**

The only question before us is deciding whether the court of first instance had jurisdiction to consider the request of the Board of Directors of the Montebello Condominium ordering defendants to comply with D.A.Co.'s order related to the alteration of the façade carried out by them. Said court decided that it did not have said jurisdiction, believing that only D.A.Co. has the authority to attempt to judicially enforce one of its administrative orders such as the one before us. The court of first instance ruled as follows:

> "When DACO exercises its exclusive jurisdiction as to a matter, it issues an order and it is breached, the interested party may not initiate a separate proceeding before the Superior Court to request that it enforce the administrative order. Appendix I, p. 6.

The lower court did not provide a detailed basis for its novel decision. It merely cited some

**Junta Dir. Cond. Montebello v. Fernandez, 1994 JTS 80 (1994)**

136 D.P.R. 223

brief statements we made in *D.A.Co. v. Alturas Fl. Dev. Corp. et al*, 132 D.P.R. 905 (1993), in which we indicated in passing that the judicial process used by D.A.Co. to enforce its orders is an integral part of the proceedings before said agency which gave rise to the administrative order that is sought to be enforced judicially. The court of first instance supposed[1] that if D.A.Co. had exclusive primary **\*230** jurisdiction to consider the problem as to the condominium, the authority to judicially enforce the resulting administrative orders also corresponded exclusively to it, in light of the fact that both steps are an integral part of a single proceeding. Said supposition, however, is incorrect, as we shall describe below.

### III

[1] As is well known, judicial forums in Puerto Rico are courts *of general jurisdiction.* As such, they have the authority to consider any cause of action that presents a dispute that is subject to adjudication. Court of *limited jurisdiction*, which can only review matters that are expressly authorized by law, are fundamentally different. To deprive a court of general jurisdiction of its authority to consider a specific matter, it is necessary for it to be expressly stated in a statute or that it arises as a necessary implication. *Ferretería Matos, Inc. v. P.R. Tel. Co.*, 110 D.P.R. 153 (1980); *Rosado v. Registrador*, 71 D.P.R. 553 (1950); *Oronoz v. Román*, 26 D.P.R. 25 (1917); *Antonetti et al. v. Foot et al.*, 16 D.P.R. 590 (1910); *Coll et al. v. Rigo*, 16 D.P.R. 319 (1910); *Lowande v. García*, 13 D.P.R. 271 (1907); 13 *Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction*, Sec. 3522, págs. 6065 (2nd ed. 1984). See, also: *Noriega v. Gobernador*, 122 D.P.R. 650 (1988); *Vélez Ruiz v. E.L.A.*, 111 D.P.R. 752 (1981); *Fine Art Wallpaper v. Wolff*, 102 D.P.R 451 (1974).

[2] According to the said general legal principle, **\*231** the court of first instance in the case before us would be prevented from considering the cause of action at issue for lack of jurisdiction solely if it was clearly provided by law. A careful analysis of the relevant legislation, however, reveals that said obstacle does not exist. Neither the Enabling Act of the Department of Consumer Affairs (D.A.Co. Enabling Act), Law No. 5 enacted on April 23, 1973 (3 L.P.R.A. sec. 341 *et seq.*), which creates D.A.Co. and defines its powers and responsibilities, nor the Horizontal Property Act, 31 L.P.R.A. sec. 1291 *et seq.*, which regulates matters related to condominiums, prohibit the board of directors of a condominium from filing a judicial

action to enforce an order of D.A.Co., when said agency has declined to enforce it through courts. The Uniform Administrative Procedure Act of the Commonwealth of Puerto Rico, 3 L.P.R.A. sec. 2101 *et seq* does not prohibit it either.

[3] In effect, said three (3) laws contain explicit and detailed provisions related almost exclusively to *judicial review* of administrative orders. They say very little, specifically, as to the special power of the agency to enforce said orders judicially and they do not indicate or suggest anything as to the *exclusivity* of said power.[2] D.A.Co.'s enabling act does contain a provision that authorizes the Secretary to turn to the Superior Court to request enforcement of any cease and desist order issued by it or any corrective order, 3 L.P.R.A. sec. 341 *l*(e), which clearly establishes the authority for D.A.Co. to be able to attempt to judicially enforce administrative orders **\*232** like the instant one. But, by its very terms, said provision is *optional* and in no way does it establish an exclusive power.

[4] Additionally, it should be noted that the Horizontal Property Act imposes on the board of directors of a condominium the special duty to enforce rules related to common general elements of the immovable property, and expressly authorizes it to comply with and enforce the provisions of said law and of immovable property regulations. 31 L.P.R.A. sec. 1293b-4(a) and (i). Said provisions of said law can reasonably be interpreted as an authorization to appear before courts in cases such as this one. That is particularly so in light of the fact that D.A.Co.'s Enabling Act authorizes said agency to impose administrative fines for violations of its orders, and D.A.Co. had advised the board of directors in this case that if they did not take the steps necessary for correction of the illegal façade alterations in question, a fine of up to $10,000 would be imposed on the board. The board, thus, was subject to a valid D.A.Co. mandate, and since said agency opted not to enforce said order itself, the board did not have any other alternative than to appear before the judicial forum to be able to comply, not only with the duty established by the Horizontal Property Act, but also with the order issued by D.A.Co. itself. If the judicial forum was not available in cases such as this one, clearly important public policies would be thwarted, such as those contained in the two (2) aforementioned laws. Effective implementation of these public policies thus argues against supposing that the judicial remedy at issue is exclusively available to D.A.Co., particularly when there is nothing in the relevant legislation that permits the conclusion that there was an intention to restrict jurisdiction that courts

**Junta Dir. Cond. Montebello v. Fernandez, 1994 JTS 80 (1994)**

136 D.P.R. 223

would otherwise have in this manner. **\*233**

#### IV

[5–6] It is true, as decided by the learned court of first instance that in Puerto Rico there is a doctrine of exclusive primary jurisdiction that acknowledges that a certain administrative entity shall be the only entity with original jurisdiction to consider certain matters. The purposes of the legislator in granting exclusive primary jurisdiction to the administrative entity are well known. It seeks to supply a simple and agile low-cost procedure that handles a matter without the procedural rigor that has characterized traditional courts. Other times, said jurisdiction seeks to satisfy the objective of offering the benefit of the parties that have the most knowledge as to the highly technical subjects that are being discussed. *Srio. D.A.C.O. v. J. Condóminos C. Martí*, 121 D.P.R. 807 (1988); *Ferrer Rodríguez v. Figueroa*, 109 D.P.R. 398 (1980); *Pérez Ríos v. Hull Dobbs*, 107 D.P.R. 834 (1978). But the doctrine of primary exclusive jurisdiction refers solely to the question of which forum has the *initial* authority to consider a dispute in question. *P.R. Amer. Ins. Co. v. P.R. Park. System*, 108 D.P.R. 106 (1978). By its very terms, this involves a doctrine that determines which is the appropriate forum in which to proceed *first. It is not a doctrine that excludes any judicial intervention in a dispute.*

In the case before us, when an appearance was made in the judicial forum, the administrative agency had already initially decided the dispute at issue. The specialized agency had already intervened and had decided the matter in an expedited manner. The purposes of the doctrine of primary exclusive jurisdiction had already been satisfied. It was not appropriate, then, to invoke it to deny the judicial action that was filed. Said doctrine is not effective to deprive the judicial forum of jurisdiction when what is requested is precisely to enforce an administrative order. Said doctrine is simply **\*234** irrelevant. *P.R. Amer. Ins. Co. v. P.R. Park System*, supra, p. 111.

#### V

To conclude our analysis, we must point out that in the past we have been very cautious precisely with regards to questions such as the one before us, regarding the supposed absence of jurisdiction of a court with regards to an issue due to its relation to the duties of an administrative entity. We have been reluctant to accept the lack of jurisdiction, except in such cases in [which] the legislature has expressed it unambiguously. This has been our position in relatively recent decisions, such as *P.R. Amer. Ins. Co. v. P.R. Park. System*, supra, and *Ferretería Matos v. P.R. Tel. Co.*, supra.

[7] Our reluctance to determine a lack of jurisdiction in these cases is a necessary concomitance of our concept of the fact that, ordinarily, courts of justice are called upon to decide the cases and controversies that are submitted to them, a concept that originates from the constitutional provision that establishes judicial power. *Vélez Ruiz v. E.L.A.*, supra. Deciding otherwise would threaten the basic normative framework that defines the role and duties of courts of justice in a society like ours.

#### VI

To summarize, the court of first instance had jurisdiction to consider the actions filed by the plaintiff.[3] **\*235**

In light of this, for the reasons indicated, *judgment shall be issued accordingly, reversing the decision of the Carolina Superior Court from October 22, 1993, as regards dismissal of said actions.*

Associate Judge Rebollo López concurred without a written opinion.

#### Footnotes

[1]     The case of *D.A.Co. v. Alturas Fl. Dev. Corp. y otro*, 132 D.P.R. 905 (1993) was not one that had anything to do with the question of D.A.Co.'s exclusive primary jurisdiction. It essentially involves a case as to the doctrine of piercing the corporate veil. Since it was initiated with a complaint before the Department of Consumer Affairs (D.A.Co.), which then said agency attempted to judicially enforce, we made some brief statements as to the relationship that exists between one procedure and the other. Nothing expressed therein, however, in any way supports what was decided by the court of first instance in this case. It is not even alluded to. Therefore, the decision of the court of first instance is merely its own supposition.

**Junta Dir. Cond. Montebello v. Fernandez, 1994 JTS 80 (1994)**

136 D.P.R. 223

[2]     The absence of an express provision granting exclusive power to the agency to enforce its decisions judicially is, in and of itself, quite indicative that said authority does not exist. In North American law, the source for our framework of administrative agencies, it is clear that the question of exclusivity depends on said authority having been clearly granted by statute. See: *Amalgamated Workers v. Edison Co.*, 309 U.S. 261 (1940); 2 *Am. Juris. 2d Administrative Law* Sec. 524, p. 512 (1994).

[3]     The argument of the respondents that they were not given the opportunity to be heard before D.A.Co. and that therefore due process of law has been violated, if valid, must be considered in the court of first instance. That is to say, in judicial proceedings, in order to consider and decide the plaintiff's lawsuit, defendants, *if they have a right*, shall have an ample opportunity to be heard, to present evidence, to have access to relevant documents, and all other rights guaranteed by due process of law. They shall also have the opportunity to decide whether the above corrects any omission that harmed their rights by D.A.Co., if any.

**End of Document**     © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**CERTIFIED TRANSLATION**

*pql*

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate

translation, to the best of my abilities, of the document in Spanish which I have seen.